May it please the Court, James Thompson on behalf of Petitioner Appellant Andranik Petrosian. In this case, Your Honor, trial counsel was ineffective for the issues dealing with the proffer statement that occurred prior to the trial. Trial counsel should have moved first to prevent the statement coming in from Petrosian and then moved to Andranik Petrosian. Andranik Petrosian v. Petrosian May I ask counsel if there was any evidence at all before the trial began because the prosecution had advised them that they were going to seek, or advised defense counsel that they were going to seek the introduction of the statement. Let me make sure I got the state of play correctly in mind. I understood our court's affirmance of your client's conviction on direct appeal to basically foreclose any suggestion that these statements should not have come in in the first place. Am I wrong in understanding that? No, I believe you're correct with respect to the direct appeal. Right, so you're not going to be able to stand here and argue that counsel was ineffective by not trying to get the statements excluded because we know now that that would have been a completely meritless attempt, right? It would have under the standard that was being utilized for the direct appeal. All I was doing was laying the groundwork for the issue that's in this case, which is that trial counsel should have, when he had been given the opportunity, moved for a mistrial. So let me just frame this this way and tell me if you disagree with this. I look at it like this. There really were no grounds for a mistrial because these statements were properly going to be admitted. However, the district court was basically offering a mistrial for the taking, and your position, I assume, is that defense counsel was ineffective for not taking a gift that maybe he wasn't entitled to but nonetheless was offered. Is that the right way to look at this? I don't think it's the right way to look at it, but I understand what the court is saying. How is my framing of it wrong, then, in light of the affirmance of the conviction on direct appeal? Because I don't think that the appeal itself, as I set out in some of the briefing, directly controls this issue because under Rebbi and Mezzanotto, the statements should have been kept out as being introduced in the case in chief. Yes, but the predicate for the lie clause, which was invoked in this case from the plea agreement, or the proffer agreement, which would be paragraph, what is it, 4C? 4B, I believe, Your Honor. Anyway, 6. Your client's complete untruthfulness, and so on, and if there's a lie, then we can use anything you say during this proffer. That's what I understand this case to be about, that he was saying, well, he misstated what happened with Heidi's advertising, and she testified during the case in chief, as I understand, and she established the lie that our prior panel said justified the invocation of this paragraph 6. Now, if that's his assessment, at the time, what I understood his strategy to be was to say, well, it wasn't a big lie. It wasn't a, he didn't, I don't think he said a lie. He seemed to be arguing that it was not material, and therefore, the court should not admit all of the proffer statement but limited to the matters relevant to Heidi. Now, if it had been on the rebuttal side, as I understand the proffer waiver provision applying to impeachment, and that would be the other, you know, the Supreme Court cases, because they weren't case-in-chief cases, that would have been the remedy. It would have been, you know, that would have been the waiver. They could introduce to impeach his testimony that what he said about Heidi wasn't true. But the paragraph 6 waiver says if you lie, everything comes in. So why is that, if that's the case, what would the mistrial get him? What's he going to get on a mistrial? He's still going to be stuck with the lie, and he's still going to get stuck with the admissibility of the proffer. The same issues are there, aren't they? Your Honor, to go back to the first part and then answer your question, the basis for allowing the admission of the proffer statement was twofold. One, defense counsel had said something in the opening statement that the prosecution But that's a collateral one. Okay. But that was the first part. Precursors of this case. Right. And then the second part, instead of defense counsel arguing that the statement should not have come in in the case-in-chief, argued that he did not believe that the statements themselves were necessarily a lie, that they were not relevant, or there was a misunderstanding. All of that's premised on the fact that, and this is one of the things that the trial court observed, that the court was disturbed about the fact that there was no video recording, there was no other type of recording, and there was no actual testimony of the proffer statement. It all came in through an agent, through an agent's report. So there was nothing in which you could analyze whether or not that lie was based upon what Mr. Petrosian had actually said or whether it was based upon what it is that the agent recalled him saying. Coupled with the additional problem that Mr. Petrosian made clear early on about the fact that the interpreter that was used during the proffer statement spoke in Armenian. I understand all that. And he was Russian. I understand all that. But Judge Wilson went through this pretty thoroughly. Yes. I'm trying to put myself in the situation, as I think we have to do, and I'm trying to figure out where trial counsel went wrong. And you're saying, well, he should have disputed the foundation. The Supreme Court cases didn't rule out case-in-chief. What they raised, I think it was Justice Ginsburg, raised a concern. But other circuits confronted with the case-in-chief situation have said, we don't see a distinction. And D.C. Circuit, Pat Wald, very thoughtful opinion, Tenth Circuit, a couple others, Eighth, I guess. So I'm trying to figure out what would have been the posture in this case if counsel had taken up Judge Wilson on the mistrial. The state, the confession would not have come in the case. Mr. Petrosian would not have. Why? Why? Mistrial means that there's a retrial, right? That's correct. Okay. It would have been before Judge Wilson? Yes. I assume. Yeah. Okay. So what is that, what would he have argued to keep the statement out? That's what I'm trying to understand. Right. And he would have argued under Revy and Mezzanotto that the statement should not have come in the case-in-chief. And then he's right. And the government would have cited all the other circuits and said, well, that's a distinction without a difference. Well, I think Revy- Those cases, I mean, Revy does not have the broad waiver in it that this language does. No, this is- He's still got to prove or establish that there's a bar somehow to introducing the statement when the predicate is made during the- for the lie clause is made during the case-in-chief. Why would they have to wait with the clause six in here? Why do they have to wait till rebuttal? Because Revy and Mezzanotto talk, and Revy talks about it extensively, I think, about the difference between being allowed to put the statement in in rebuttal versus being allowed to put the statement in in the case-in-chief. I understand that, but they don't say it's prohibited. No, but I think Justice Ginsburg, joined by Justice Breyer- I know who joined. Counsel, I'm citing you to circuits post-Revy that have disagreed with your position. Right, and Mitchell, Sylvester, and the other cases that are cited, I took on in the briefing about how they do not control, given the language in Revy, which is much stronger and incorporates the language of Mezzanotto. So I think that the Ninth Circuit law at the time that this case was decided was Revy as interpreted by Mezzanotto. And at that point in time, the motion for mistrial was fully warranted, and defense counsel should have made the motion at really suggestion of, almost employment of, by the district court judge about the fact that this should happen. Because the district court judge was very upset about the fact that the court had not been informed about Revy or Mezzanotto. It wasn't until the agent got on the stand, and the agent talked about the full confession, that the district court judge said, whoa, wait a second. There's something wrong here. There's something wrong about the fact that this isn't recorded. There's something wrong about the fact that it isn't being presented in total, it's being presented by an agent. And there's something wrong by the fact that the government did not brief Revy and Mezzanotto, and defense counsel did not brief those cases. And the court asked for independent briefing three times. I think we're all totally familiar with what Judge Wilson went through and what the record is. I've been trying to focus you on the legal argument to be mounted on a retrial. And that's what I'm focused on. That's the question of law, because under ineffective assistance of counsel, as you know, you have to prove prejudice. And if it's a futile effort, there's no prejudice. I understand. And I think that trial counsel would, on the new trial, be able to keep the statements out at that time under Revy and Mezzanotto from coming in the case in chief. That would not have required the defendant to testify in the case. Yes, Your Honor. The problem I have with the mistrial aspect of this is it seems to me that the decision to move for mistrial or not is a quintessential tactical judgment of counsel. He has to decide whether a bird in the hand is worth two in the bush. He knows how the case is going. He knows the jury that he's picked. He's got to decide, would he be better off starting again with a new jury and a new presentation, or was he sufficiently satisfied with the way things were going? And not only that, but he apparently made this decision in consultation with the client. I'm having a hard time finding how that can be ineffective assistance under those circumstances. Well, if you assess at the moment, if you assess your trial and where you're at in the course of the trial, he gained something in terms of the impeachment of the witnesses, which he would be able to do in the second trial. And he would not have at that point in time when he was faced with the issue about mistrial, he would not have had another trial in which his client's confession to the crimes would have come in in the case in chief. I don't think there's a defense attorney ever that wants a confession to come in in the case in chief. You're assuming that Rebbi forecloses it. It does not. The footnote says that serious concerns of Justice Ginsburg would be triggered, but we don't need to resolve that issue. This case would have presented the issue. That's right.  So he had a hook. I grant you he had a hook to argue, but he also, if people had done their research, would have discovered other federal circuits who had addressed the issue said they did not believe that Mazinato foreclosed the government from ever putting it in a case in chief. And the facts of this proffer agreement are that the proffer was made with the broad provision of paragraph six. Paragraph six goes beyond Mazinato. It arguably, it seems by its terms, to include case in chief, so long as there is evidence that the defendant during the proffer misrepresented or withheld information, then he agreed that everything could come in. It doesn't set any limits to rebuttal or anything like that. That's the prior paragraph. And as Judge Wilson pointed out, then there's the mysterious paragraph seven that boots all of the above and said, well, this is not even a plea situation. So none of this applies. And he tried to puzzle through that and figure out, well, that seems to moot all of the stuff that came before. But I think there's the difference between the proffer and the plea. And I think Rebbi, though, I understand Mitchell and the other cases that are decided, Birch and some of the others decided afterward. But at the time, the district court judge was looking at Rebbi and Mazinato. And both of those cases, I think, give a clear impression that admitting this in the defense in the government's case in chief is the problem because it takes away a defense. Counsel, I don't disagree with that. I really don't. But to say that he had no strategic reason to do to refuse the mistrial. And maybe, you know, we don't know what his reasoning was. But the fact remains that other circuits who have addressed it, and if it was later, I appreciate that. But they have concluded that the case in chief distinction is not mandated by Mazinato. And while informative, those are not necessarily controlling in the Ninth Circuit, as this court is well aware. We are. From Dauntless in 1904. Sometimes, yeah, sometimes we win in those contests. I understand. So I just think that making a decision where you could have your client's confession removed from the case is not something you would do as a reasonable counsel. Yes. But his strategy was not to remove the whole confession. He wanted to limit. That is, he wanted to excise it by limiting the admissibility just to Hydees, those related to Hydees. Yes. You're saying, well, he made a mistake in that. And then Judge Silverman's point is that incompetence of counsel or a strategic choice he made. I got your point. If I might have a moment for rebuttal. Sure. Thank you. We took you all over. Let's hear from the government. Good morning, Your Honors. May it please the Court, Vicki Cho for the United States. In this case, I agree with the Court that the defense counsel was not entitled to an exclusion of the proffer statements, that neither Rebbe nor Mazzanato would compel the exclusion of proffer statements, both because of. If you could help me, because I will confess I was confused by the dialogue that Judge Fischer was having with defense counsel in this respect. Is it the case that on the direct appeal, these very arguments were litigated before our court and we ended up saying that, no, it was perfectly okay to let the statements in during the case in chief? The question of whether or not the proffer statement was properly admitted was before this Court at the direct appeal. Whether or not they were admissible or admitted under Rebbe or Mazzanato was not the direct issue, but part of that was because it would be the government's submission that Rebbe and Mazzanato do not directly. Well, let me ask you this. I'm looking at the mem dispo, and we say the district court properly admitted the statements Petrosian made during the proffer session. There's a very brief discussion that follows. What was the argument that defense counsel made on the direct appeal to say that that was error to admit the statements? Was it the same arguments that we were just hearing debated here? No, they were basically the same arguments that were made before the district court, that they weren't material, not that Rebbe or Mazzanato precluded case in chief waivers. That's partially because, as Your Honor was discussing with appellate counsel a moment ago, there was this paragraph 7 in this proffer agreement that made the statements here not even plea negotiations subject to Rule 11 or Rule 410. And as a result, Mazzanato and Rebbe would not apply because those cases were discussing whether or not it was appropriate to have waivers of these federal rules. Okay, but so let's take this hypothetically. Can I just get a clarification? Are you saying the prior panel relied on paragraph 7? No, I'm saying the prior panel relied on paragraph 6, that under a contract law interpretation, because the defendant had been untruthful, he had no protections. Right. And that's different from a case in chief waiver based just on a defendant waiving any protections he would have under the federal rules. Okay, so let me pose this hypothetical, and then you can tell me if this is not our case. Let's say that a district court judge is under the mistaken impression that evidence that has come in should not have come in and is basically willing to grant the defendant a mistrial. And let's just say that the judge is wrong, but that's his view of the evidence at the time. And he's basically saying, if you ask for it, defendant, I'll give you a mistrial, and presumably at the retrial those statements are not going to come in because why would I otherwise have granted a mistrial? That was the very error that supposedly triggered the right to a mistrial. So in that scenario, couldn't you say, even if the judge ultimately would have been wrong on the law, that the defense lawyer had to be an idiot not to take that gift? That's why I framed it as it sounded to me like it was Judge Wilson was offering a gift that maybe the defendant wasn't entitled to, but it was nonetheless offered, and what possible sound strategic judgment could a defense lawyer make? We're basically saying your confession has now been put before the jury in the government's case in chief. I'm offering you a chance to start all over, have a new trial where the confession doesn't come in at all. Who would be dumb enough to turn down that deal? A couple points. First, as the government briefed, defendant is not entitled to have a court make errors in its favor. But second of all, I think that hypo goes beyond what the facts of this case were, which is that Judge Wilson didn't actually say, on a retrial we would definitely exclude these proper statements. You would not have to testify at trial. He just said, I would be inclined to consider these arguments. He most likely, based on the way things had gone before, would have opened it up for further briefing. At that point, government counsel would have found the other cases, some of which had been decided in the other circuits before this case went to trial. Of them anyway. Yes, Your Honor. And certainly in the government counsel, if more attention were being paid to these two cases, we have made the arguments that I'm making now, which are that Mezzanotto does not cover the situation, which is not a pure case in chief waiver. Ms. Cho? Yes. Let me add another element to Judge Watford's hypothetical. In addition, the judge asks the lawyer, what does your client want? Or why don't you confer with your client? Which is what happened here, right? Yes, Your Honor. And counsel and the client conferred. And then counsel said, basically my client doesn't want a mistrial. He wants to go forward, right? Yes, Your Honor. How does that figure into the mix? And so even assuming I were to take this hypothetical head-on, that is an indication that there is no cause in this case, because the defense counsel's decision was a strategic decision made after consultation with the client. Well, we don't know what they talked about. Well, actually, based on the interrogatories that were submitted as part of the briefing on the habeas petition before the district court, the defense counsel said he did not make a mistrial because his client did not want one, that he consulted with his client and that they saw no advantage to making a mistrial. And that's exactly what Judge Silverman was, I think, the reference to how this is the quintessential tactical decision. That's exactly it. So much had happened in this trial at this point. It would be very difficult for a defense counsel to make a decision about this. And it would have to necessarily be a strategic decision, because they would be weighing the possibility that, on the one hand, this trial was going as well as it could have. There were, beyond just the way the trial was progressing, there were things like one of the jurors had been dismissed, so an alternate was sitting as part of the panel. The witnesses would have been better coached for the second time they came around. You know, any number of these things versus moving from mistrial and not knowing if there would be any difference when they came back around. Well, let me return to Judge Silverman's addition to the hypothetical, because I'm not sure I agree with your answer. Let's just take my hypothetical on its own terms. And what we are truly talking about is a confession that is basically going to doom the client's chances before the jury. It has come in. The judge has offered, whether rightly or wrongly, has offered to grant a mistrial and is going to exclude the confession at the new trial. You think that even if the lawyer turns to the client and says, hey, should we do the mistrial, and the client says, no, I want to go forward, that the client has sort of waived the right to complain later that the lawyer gave? I mean, it seems to me in that scenario the lawyer's obligation is to say, wait a minute, Your Honor, we need a break because I have to talk my client out of this idiotic decision that he's about to make. You couldn't just defer to the client's wishes on that. You'd have an obligation to say, no, this is crazy. Of course we're going to take this mistrial, right? And I'm not saying that the defense counsel, that the client could have waived. This isn't a waiver issue. I'm saying that this is a reasonable strategic decision. Not in my hypothetical. It's not. But, Your Honor, it could still be because, as the trial court noted, the evidence in this case was compelling, overwhelming even. And so even without the confession. Stop, because that just seems absurd to me. I'm talking about a confession that has come in, and the judge is saying, hey, would you like to start all over without your client's confession coming in? You think under any circumstances, I don't care how strong the government's evidence is, that that's not a good deal for the defendant? It certainly could still be a strategic decision. Senator Reno used to invoke the saying, I don't do hypotheticals, because she never wanted to get pinned down. But go ahead. I hear you. It's a different case. I'm content with that. But, Judge, just to clarify, Judge Wilson never said he would exclude the confession. Correct, Your Honor. And so that's why I began my response to Judge Watford's hypothetical with saying that this was stronger than the facts before us in this case. And so I've touched on cause. I've touched on how I think the law would not lead to a different result with respect to the exclusion. And I just wanted to discuss prejudice very quickly, which is that I think much of the appellant's briefing was focused on how there would be a difference in how prepared the defendant would have been at testifying if he had had an opportunity just to prepare, even if everything else was still going the same way in the second trial. And I just wanted to point out in the record that trial counsel in his response to the interrogatory said that he had discussed with his client many times whether or not he would testify, what he would say if he would testify. His actual testimony showed that it was prepared, it was quite lengthy, and it wasn't this awkward thing that appellant counsel was making it out to be. But I also wanted to point out something I just noticed on my review in preparation for this, which was that government counsel noted in a trial memo that whether or not there would even be litigation over the admission of a par for statement might depend on whether or not the defendant was going to testify anyway, which I think just further goes to show that he was prepared to testify. If that's the grounds for prejudice, it doesn't exist. And then, again, as I was saying just a few moments earlier, this was a very strong case for the government. There were multiple cooperators. A lot of the evidence had already been put in before anything about the defendant's prior statements or his testimony in the trial came in. So unless this Court has any further questions. Okay. Thank you very much. Let's give counsel for the comment a minute for rebuttal. I'll be as quick as I can, Your Honor. On the direct appeal, the Court's holding that the par for statement was properly admitted was made in the context of the holding that the trial court's finding that Mr. Petrosian was not completely truthful was not clearly erroneous, okay? This Court has not ruled on whether Mr. Petrosian's par for statement should have been excluded under Rebi and Mezzanotto. So that's what I was trying to talk about, the appeal. And I think the government agreed with that. And with respect to the cases that were cited by the government, the other cases, not Rebi and Mezzanotto, clearly the district court did not take those into account as much as the district court was impressed by Rebi and Mezzanotto, explaining that this is Ninth Circuit law, this is very clear about the difference in case in chief, and therefore then asked for whether you want to have a mistrial. So the Court had taken into account those Out-of-Circuit Court cases and still made the offer at that point in time. Well, I don't think so because I don't see any reference to Birch, which is the D.C. case that was decided in 1998 by Judge Wald with Judge Tatel on the panel. And I think their analysis of the case in chief issue, while it has some factual differences from the broad waivers in this case, I'm sure Judge Wilson would have looked at that carefully. And that's why I think it's important to note that he did not say on his mistrial invitation that he would in fact exclude the testimony. And the fact is that Rebi in his footnote does not explicitly does not resolve the issue. So, you know, I take your point. You know, he had an arguable shot. That's true. The question is was it, you know, incompetence to, you know, we're in after the fact going through all this analysis. He had to make a judgment at the time. And I understand. But I do have to look down the road and see whether it was likely to be a successful argument. Maybe we can't. And I appreciate it. But I don't think that the trial judge had to say, do you want to make a mistrial? If you do, I assure you that I will keep your confession out. I think that would be improper. Well, I do, too. And I think counsel for the government argued there will be further briefing and there will be a lot more focus rather than the middle of the trial on these issues. And that was what was denied to Mr. Petrosian, the opportunity to accept the mistrial that was on a platter for him to maybe not have. And I think my read of it is not have his confession come in at the second trial. And that made a big difference. Because this is not an overwhelming case. Count two was not decided by the jury. Count one and three were based on a proper statement. If that confession is out, then count one and three don't have the evidence that they had to begin with. And lastly, I think with respect to the issue of whether or not it mattered whether there was conversation between the defendant and the trial counsel, this is trial counsel's decision with respect to whether or not to move a mistrial. Are you telling me that if the client says, I don't want a mistrial, I like the way this trial is going, or for whatever reason I want to get the trial over with, I don't want to do it again, you're telling me that defense counsel has to stand up and move for a mistrial anyway? Is that your position? No. What I'm saying is the example that Judge Watford gave about what has to happen has to happen, which is, Your Honor, I need a break here. I need to explain to my client, who speaks Russian as his primary language, exactly what is going on here so that I can inform him of what he should do. This occurred in one second. They did confer. And in record for one second. And that is not adequate time to explain. Is there anything in the record on this 2255 motion where the client says, I didn't have sufficient time to confer with the lawyer or the lawyer misrepresented my view or anything of that sort? I do not believe so, Your Honor. It was a pro se 2255. I mean, it was also like the client slipped in and said it was a tactical decision. Well, you can't hold the client to that. Client doesn't know that difference. It was a pro se decision. Well, I mean, the record is the record. If there's nothing that says the lawyer didn't explain it to me adequately or I didn't have enough time, if there's nothing in the record, then there's nothing in the record. Well, I agree there's nothing in the record. And the answers to the interrogatories are not the elaboration I think the government's counsel is indicating in the argument here. They're just yes-no answers. And talking to a client about the fact that they may testify occurs in every case. But that doesn't mean it's the kind of decision that needed to be done in this particular case. And the examination of the client was not, as government counsel points out, kind of, you know, very nice. There were 17 objections that were sustained, 17 objections made by the government that were sustained by the trial court because they were improper. None of the documents that would have tied in the fact that the transfers from Armenia to Mr. Petrosian were ever admitted into evidence because the client was not prepared for testimony. Let me stop you there. We've taken you well over. Thank you. It's been very helpful this morning. Thank you. I appreciate it. Thank you, Your Honor. Thank you.
judges: Silverman, Fisher, Watford